UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRUSS,

                         Plaintiff,

- *against* -                                      13cv2735 (NSR) (LMS)

ST. LUKE'S CORNWALL HOSPITAL,      OPINION AND ORDER

                         Defendant.

Lisa Margaret Smith, U.S.M.J.[1]

## I.   Factual Background

Plaintiff Lisa B. Struss brings this action against her former employer, defendant St. Luke's Cornwall Hospital. Plaintiff alleges that defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L. No. 102-166) (hereinafter "the ADA"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (hereinafter "the ADEA"); the New York State Executive Law, N.Y. Exec. Law §§ 292, 296 (hereinafter "the NYSHRL"); and state common law by discriminating against her on the basis of her age[2] and disability, retaliating against her after she raised complaints about such discrimination, creating a hostile work environment, and intentionally inflicting emotional distress upon her. Docket Entry #1, Complaint. She now seeks, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, to amend the Complaint to include allegations that defendant terminated her employment as an act of retaliation and that an unknown individual has been stalking her, as well as to assert new theories of liability based upon such

---

[1] On March 19, 2014, Judge Román referred this matter to me on for the purposes of overseeing general pre-trial matters. Docket Entry #19, Order of Reference.

[2] Plaintiff was in her early-to-mid fifties at the time of relevant events.

facts. Docket Entry #24, Mot. to Amend, Exh. 1, Proposed Amended Complaint. For the reasons set forth below, the motion is granted in part and denied in part.

In August, 2012, plaintiff apparently filed an EEOC charge in which she claimed that defendant had discriminated against her on the basis of her age and disability, and that, in response to her complaints about such discrimination, defendant subjected her to harassment and retaliation. A copy of the EEOC charge is attached to the instant motion. Docket Entry #24, Mot. to Amend, Exh. 2, August 1, 2012, EEOC Charge. Defendant terminated plaintiff's employment two days after she filed the charge; plaintiff does not allege that defendant knew of the EEOC charge at the time of her termination. Docket Entry #24, Mot. to Amend, Memo. of Law at 1. Plaintiff subsequently received a right-to-sue letter from the EEOC. Docket Entry #1, Complaint at ¶ 25.

On April 24, 2013, plaintiff commenced the instant action, asserting claims for: (1) hostile work environment under the ADA, (2) hostile work environment under the ADEA, (3) hostile work environment under the NYSHRL, (4) retaliatory harassment under the ADA, (5) retaliatory harassment under the ADEA, (6) retaliatory harassment under the NYSHRL, and (7) intentional infliction of emotional distress under state common law. Id. at ¶¶ 29-37. In the section of the Complaint entitled "Factual Allegations," plaintiff noted the termination of her employment, stating "Defendant employed plaintiff [until 2012,] when she was terminated. Defendant falsely claimed that plaintiff's position was eliminated but then hired a younger person as a per diem to do plaintiff's job." Id. at ¶ 3. Plaintiff did not reference the termination of her employment in any of the specific theories of liability set forth in the Complaint. See id. at ¶¶ 29-37.

On or about May 20, 2013, plaintiff filed a second EEOC charge, which she states was "to allege termination." Docket Entry #24, Mot. to Amend, Memo. of Law at 1; Docket Entry #24, Mot. to Amend, Exh. 3, May 20, 2013, EEOC Complaint.[3] In the charge, plaintiff claimed that defendant had refused to reasonably accommodate her disability and had terminated her employment. Id.

On December 5, 2013, the EEOC dismissed plaintiff's second charge, closed its file on the matter, and issued to plaintiff a second Notice of Right to Sue. Docket Entry #24, Motion to Amend, Exh. 1, Proposed Amended Complaint at ¶ 29; Docket Entry #25, Affirm. in Opp., Exh. B, Dismissal and Notice of Rights. The notice detailed plaintiff's rights with regard to any potential claims under the ADA or the ADEA, stating:

> This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Id. (emphasis in original)

---

[3] Plaintiff states that the EEOC transmitted her first charge to the wrong hospital. Docket Entry #24, Mot. to Amend, Memo. of Law at 7. She claims that such mistake, in addition to the fact that her employment was terminated two days after the filing of the EEOC charge, necessitated the filing of the second EEOC charge and the amendment of the Complaint. See id. However, nothing before the Court shows that the EEOC's initial transmission of the charge to the wrong hospital in any way necessitated the filing of the second charge or amendment of the Complaint. Plaintiff states in the Complaint that, although the first charge initially went to the wrong hospital, she still received a Notice of Right to Sue, Docket Entry #1, Complaint at ¶ 25, and it appears that such notice is the basis for plaintiff's claims under the ADA and the ADEA as set forth in the original Complaint. In fact, her arguments in the Reply contend that the second EEOC charge was altogether unnecessary because the first charge sufficiently alerted the EEOC of all of her claims. Plaintiff's focus on the EEOC's transmission of the first charge to the wrong hospital, therefore, may be nothing more than an effort to distract the Court from the tardy assertion of her claims in the instant motion.

On December 18, 2013, defendant answered the Complaint, contending, among other things, that plaintiff had failed to properly exhaust administrative remedies necessary to raise the ADA and ADEA claims set forth in the Complaint. Docket Entry #13, Answer at 5. On June 30, 2014, plaintiff filed the instant motion. Docket Entry #24, Mot. to Amend. Defendant opposes the motion, in part.

## II.   Motion to Amend the Complaint

### A.   Standard of Review

Fed. R. Civ. P. 15 provides a party with a vehicle to supplement or amend his or her original pleading to state new facts or claims. Fed. R. Civ. P. 15(a)(2), which is the basis for plaintiff's motion, permits a party, with leave of the court, to amend his or her operative pleading at any time prior to trial. Generally, leave to amend should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); see Foman v. Davis, 371 U.S. 178, 182 (1962). However, a motion to amend will be denied in the event of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Id. "Futility," for purposes of a Fed. R. Civ. P. 15(a) motion to amend, turns on whether the proposed pleading sets forth a claim upon which relief could be granted that is sufficient to withstand a dispositive motion. Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87-88 (2d Cir. 2002); Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001); Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 782 (2d Cir. 1984). "Thus, if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground, the Court will not permit the amendment." Milano v. Barnhart, 05cv6527 (KMW) (DF), 2007 WL 2042954, *1 (S.D.N.Y.

4

July 12, 2007) (quoting <u>Jones v. New York State Div. of Military & Naval Affairs</u>, 166 F.3d 45, 55 (2d Cir.1999) ("amendment would be futile . . . because the proposed complaint would be subject to immediate dismissal")).

### B.    Discussion

Plaintiff seeks to amend paragraph 7(D) of the Complaint to include the word "Also." Docket Entry #24, Mot. to Amend, Exh. 1, Proposed Amended Complaint at ¶ 7(D). In addition, plaintiff moves to include in the Complaint the factual statement: "Following her termination, plaintiff made another EEOC charge that alleged her termination, and was later issued a right to sue." <u>Id.</u> at ¶ 29. She also seeks to amend the cause of action of "Retaliatory Harassment in Violation of NYSHRL" to include the termination of her employment as a basis for liability. <u>Id.</u> at ¶ 41. Additionally, plaintiff wishes to amend the ad damnum clause of the Complaint to include a demand for punitive damages. <u>Id.</u> at 6. Because defendant does not oppose such proposed inclusions, Docket Entry #26, Memo. in Opp. at 1 n 1,[4] plaintiff's motion is granted to the extent that she wishes to file an amended complaint including such amendments.

### 1.    Retaliatory Termination Claims

Plaintiff also seeks, through the instant motion, to amend her theories of liability under the titles of "Retaliatory Harassment in Violation of the ADA" and "Retaliatory Harassment in Violation of ADEA" to include the termination of her employment as an act of retaliation. Docket Entry #24, Mot. to Amend, Memo. of Law at 1. The paragraphs under each heading in the original Complaint both state:

---

[4] Plaintiff expressly states that it does not oppose the amendments to the factual allegations and the NYSHRL claim. Docket Entry #26, Memo. in Opp. at 1 n 1. It makes no statement at all concerning the proposed amendment to include a demand for punitive damages.

5

> Plaintiff complained to her superiors and to HR that she was being treated differently due to her age and disability and being harassed due to her age and disability, but instead of helping her, the superiors mistreated her further, and was told she was at fault for all the problems she was having, had poor judgment and was incompetent. Due to her complaints, she was retaliated against.

Docket Entry #1, Complaint at ¶¶ 34, 35. Plaintiff seeks to amend both paragraphs to add the words "and terminated" to the end of each paragraph. Docket Entry #24, Motion to Amend, Exh. 1, Proposed Amended Complaint at ¶¶ 39, 40. According to plaintiff, amendment would result in no prejudice to defendant because the new claims relate to the same facts that underlie the hostile work environment, harassment, and retaliation claims. See Docket Entry #24, Mot. to Amend, Memo. of Law at 6-7.

Defendant argues, in opposition, that amendment of the ADA and ADEA claims to include the termination of plaintiff's employment would be futile. Docket Entry #26, Memo. in Opp. at 1. The proposed new claims, according to defendant, would be untimely because they would come more than ninety days after plaintiff's receipt of either right-to-sue letter. Id.

The "[e]xhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks and citations omitted); see Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004) (per curiam); Young v. Lord & Taylor, LLC, 937 F.Supp.2d 346, 352 (E.D.N.Y. 2013) (In the context of claims under Title VII or the ADEA, "[e]xhaustion of remedies is a precondition to suit, rather than a jurisdictional requirement."). The ADA incorporates the procedural requirements of Title VII, 42 U.S.C. § 12117(a), and, therefore, a claimant must similarly exhaust his or her administrative remedies prior to bringing a claim pursuant to the ADA in federal court. "The purpose of the doctrine is to afford the agency an

opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." Wilson v. Pena, 79 F.3d 154, 165 (D.C. Cir. 1996). "A plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [his or ]her EEOC charge." Young, 937 F.Supp.2d at 352 (internal quotation marks and citation omitted).

The ADA provides that a claimant may bring suit in federal court only if he or she has filed a timely EEOC charge and received a right-to-sue letter. See 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(d)(1). The ADA, through its incorporation of the procedural requirements of Title VII, requires that "any federal court action must be filed within 90 days of receipt of a right to sue letter from the EEOC." Fol v. City of New York, 01cv1115 (THK), 2003 WL 21556938, *4 (S.D.N.Y. July 9, 2003); see 42 U.S.C. § 12117(a) (adopting the ninety-day limitations period set forth in 42 U.S.C. § 2000e–5(f)(l) for the ADA).

The ADEA requires that a claimant file an EEOC charge at least sixty days prior to initiating an ADEA suit in federal court. 29 U.S.C. § 626(d). Unlike Title VII and the ADA, the ADEA does not require that a claimant obtain a right-to-sue letter from the EEOC prior to bringing a claim against his or her employer in federal court. Compare 29 U.S.C. § 626(d)-(e) with 42 U.S.C. § 2000e-5(e)-(f); see Hodge v. New York College of Podiatric Medicine, 157 F.3d 164, 168 (2d Cir. 1998) ("Whereas Title VII plaintiffs must receive a right-to-sue letter from the EEOC before filing suit in court . . . , ADEA plaintiffs need only wait 60 days after filing the EEOC charge." (internal quotation marks omitted)). "However, in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant must file [his or ]her federal suit within 90 days after receipt of the letter." Holowecki v. Federal Exp. Corp., 440

7

F.3d 558, 563 (2d Cir. 2006) (citing 29 U.S.C. § 626(e)); see Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).[5]

"While the 90-day rule is not a jurisdictional predicate, 'in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.' " Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984) (quoting Rice v. New England College, 676 F.2d 9, 11 (1st Cir. 1982) (Breyer, J. on panel)). "The 90-day limit at issue here is not merely a suggestion; it is a statutorily-imposed requirement necessitating strict adherence, subject only to very narrow exceptions." Celestine v. Cold Crest Care Center, 495 F.Supp.2d 428, 432 (S.D.N.Y. 2007); see Rosquist v. New York Univ. Med. Ctr., 97cv8566 (JGK), 1998 WL 702295, *5 (S.D.N.Y. Oct. 7, 1998) (Courts typically regard the requirement that a lawsuit be brought within ninety days of receiving the Notice of Right to Sue from the EEOC as the equivalent of a statute of limitations.); Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 176 (3rd Cir. 1999) ("This requirement has been treated by the courts as a statute of

---

[5] Plaintiff, in her Reply, argues: "The ADEA contains no language mandating that a lawsuit be brought in a particular time after a plaintiff goes to the EEOC. 'The ADEA contains no express time limit for filing a suit for judicial relief after a complaint has been filed with the EEOC. 29 U.S.C. [§] 633a(c).' Therefore, plaintiff's ADEA discrimination and retaliation termination claims should be allowed to go forward." Docket Entry #27, Reply Memo. of Law at 4-5.
    The time frame for commencement of an action under the ADEA is not tied to the filing of an EEOC charge, but is, instead, linked with the receipt of the resulting right-to-sue letter. As noted, the plain language of 29 U.S.C. § 626(e) mandates that a claimant bring suit within ninety days of receipt of the relevant right-to-sue letter or lose his or her right to assert the claim in federal court. Holowecki v. Federal Exp. Corp., 440 F.3d 558, 563 (2d Cir. 2006). Plaintiff's citation to 29 U.S.C. § 633a(c) as relevant authority is inapposite; that section of the ADEA concerns employees of the federal government, which is evident from the statute's heading – "Nondiscrimination on account of age in Federal Government employment." Further, § 633a "is independent of any other section of [the ADEA]," H.R.Conf. Rep. No. 950, 95th Cong., 2d Sess. 11 (1978), and its provisions are "self-contained and unaffected by other sections, including those governing procedures applicable in actions against private employers." Lehman v. Nakshian, 453 U.S. 156, 168 (1981).

8

limitations rather than a jurisdictional prerequisite to suit."); see also Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) ("procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants") (per curiam).

Plaintiff's counsel's Memorandum of Law in support of the instant motion fails to address the timeliness of the claims with respect to the ninety-day limitations period set forth in the right-to-sue letters. Such omission is puzzling because both the Court and defendant's counsel challenged the timeliness of the proposed claims during the June 10, 2014, telephonic conference, at which plaintiff first proposed the instant motion. Plaintiff's counsel first addresses the issue in the Reply papers. Docket Entry #27, Reply Memo. of Law at 2.

In her Reply, plaintiff appears not to contest that the instant motion comes more than ninety days after her receipt of the December, 2012, right-to-sue letter, instead arguing that the original Complaint already alleges her termination as an act of retaliation. See id. Plaintiff contends that the claims of retaliatory termination under the ADA and the ADEA in the Complaint are timely because they were brought within ninety days of her receipt of the first right-to-sue letter, and plaintiff argues that the EEOC charge (from which that right-to-sue letter originated) raised her termination as an act of discrimination to the EEOC. Id. ("plaintiff already alleged – both in her first EEOC complaint and in her federal court complaint – that she had been terminated, and that she had been discriminated against on the basis of age and disability."). In making such argument, plaintiff characterizes the currently-proposed amendment as merely an effort to formalize the factual allegations as a basis for a claim of retaliation under the ADA and the ADEA. See id.

Defendant, in opposition, notes that although the Complaint references plaintiff's termination, the pleading does not allege or imply that the act was one of a retaliatory nature. Docket Entry #26, Memo. in Opp. at 8.

As mentioned above, the Complaint does allege that defendant terminated plaintiff's employment. However, insofar as plaintiff claims that her first EEOC charge detailed the termination of her employment, such characterization is patently false. Rather, the first EEOC charge stated that plaintiff was working for defendant at the time of the filing of the first charge. Docket Entry #24, Mot. to Amend, Exh. 2, August 1, 2012, EEOC Complaint at 2 ("I am a 55 year-old [sic] woman who works at St. Luke's Cornwall Hospital."). The charge also stated, "I feel compelled/forced to resign, based on just some of the following events . . . ," id.; such statement, at most, could be construed as a potential future constructive termination. Nothing in the charge specifically alleges that defendant had terminated plaintiff's employment; it could not make such an allegation as plaintiff had not yet been terminated.

Plaintiff argues, in the alternative, that even if the original EEOC charge did not explicitly allege that defendant had terminated her employment as an act retaliation, such claim is reasonably related to those that were contained in the charge, meaning that plaintiff has sufficiently raised the issue to the EEOC, and it is covered by the original right-to-sue letter. Docket Entry #27, Reply Memo. of Law at 2. Plaintiff argues that because she commenced the instant action within ninety days of her receipt of the original right-to-sue letter, the claims were timely asserted in the Complaint. Id. at 2-3. Again, this argument operates on the assumption that the original Complaint sufficiently sets forth factual allegations that defendant terminated plaintiff's employment as an act of retaliation, meaning that the instant motion merely seeks to detail the claims as theories of liability under the ADA and the ADEA.

10

" '[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.' " Legnani, 274 F.3d at 686 (quoting Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999)) (some internal quotation marks omitted). The Second Circuit has

> recognized three situations in which claims not raised in an EEO[C] charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action: 1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks and citations omitted).[6] Claims falling within one of three exceptions are "reasonably related" to the claims in the EEOC charge and, therefore, are permitted to proceed. Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402–03 (2d Cir.1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998).

Plaintiff directs the Court's attention to the first exception, which "is essentially an allowance of loose pleading [in recognition] that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims that [he or ]she is suffering." Butts, 990 F.2d at 1402. "In determining whether the plaintiff's claims are reasonably related to the allegations made in the EEO[C] charge, '[t]he central question is whether the complaint filed with the EEO[C] gave the agency adequate notice to investigate discrimination' on the basis which the plaintiff raises in

---

[6] In Terry v. Ashcroft, the Second Circuit held that the three exceptions applied to claims brought under the ADEA and Title VII, and therefore, by operation of 42 U.S.C. § 12117(a), they also apply to those brought pursuant to the ADA. 336 F.3d 128, 151 (2d Cir. 2003).

11

her present suit." Carby v. Holder, 11cv5775 (DLC), 2013 WL 3481722, *5 (S.D.N.Y. July 10, 2013) (quoting Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir.2008) (some brackets in original)). "This analysis is 'intimately connected to the facts asserted in the EEOC complaint,' and does not depend on the boxes checked or labels applied by the plaintiff in the EEOC complaint." Id. (quoting Williams v. New York City Housing Auth., 458 F.3d 67, 71 (2d Cir.2006)); see also Alonzo v. Chase Manhattan Bank, N.A., 25 F.Supp.2d 455, 458 (S.D.N.Y. 1998) ("[I]t is the substance of the charge and not its label that controls.").

Plaintiff notes that her original EEOC charge claimed discrimination and harassment on the basis of age and disability. She contends that her termination was reasonably related to such allegations because it came only two days after the filing of the EEOC charge and was merely a further act of retaliation; consequently, it should have been discovered by the EEOC during an investigation of the charge. Docket Entry #27, Reply Memo. of Law at 2-3.

In the first EEOC charge, plaintiff claimed that defendant had (1) discriminated against her on the basis of her age and disability, (2) subjected her to a hostile work environment, and (3) retaliated against her after she complained of such discrimination. Docket Entry #24, Mot. to Amend, Exh. 2, August 1, 2012, EEOC Charge at 3. The charge detailed a variety of incidents, which plaintiff characterized as unlawful acts of discrimination. Insofar as is relevant here, plaintiff complained that defendant had reassigned her duties to a younger employee, as well as assigned her demeaning and undesirable tasks to encourage her to quit. See id. Plaintiff claimed that "[o]n June 13, 2012, I received an unwarranted, fabricated, fraudulent write up. The next write up, I would be at risk for termination." Id. at 4. Plaintiff stated that, as a result of defendant's unlawful activities, "I feel compelled/forced to resign." Id. at 3.

Through such allegations, plaintiff intimated that she feared the termination of her employment, and that, in any event, she was on the verge of resigning – potentially a constructive termination. Due to such insinuations, and because plaintiff was fired only two days after she filed the EEOC charge, an investigation by the EEOC would likely have discovered her termination. Consequently, a claim of retaliatory termination was reasonably related to the claims set forth in the first EEOC charge, and, thus, plaintiff sufficiently exhausted her administrative remedies concerning the claim. See Carby, 2013 WL 3481722 at *5.

However, although plaintiff properly raised her claim of retaliatory termination in her first EEOC charge, she did not timely raise the claim in federal court after obtaining the first right-to-sue letter. Contrary to plaintiff's assertion, the original Complaint does not plead a claim of retaliation, under either the ADA or the ADEA, based upon her termination. Rather, the only assertion in the Complaint in reference to plaintiff's termination is as follows: "Defendant employed plaintiff as a speech pathologist from 2008 to 2012 when she was terminated. Defendant falsely claimed that plaintiff's position was eliminated but then hired a younger person as a per diem to do plaintiff's job." Docket Entry #1, Complaint at ¶ 3. Such statement, at most, alleges that her termination was an act of discrimination based upon her age. Thus, plaintiff's contention that the instant motion merely seeks to formalize a claim for retaliatory termination that was already properly alleged in the Complaint is unsupported. The instant motion is, in actuality, her first attempt to raise such claim. Because the proposed claim comes more than ninety days after plaintiff's receipt of either right-to-sue letter, it would be untimely and, consequently, subject to immediate dismissal. See Celestine, 495 F.Supp.2d at 432.[7]

---

[7] The date of plaintiff's receipt of the first right-to-sue letter is not clear. However, plaintiff does not dispute that the letter contained the aforementioned language setting forth a ninety-day

Plaintiff contends, in the alternative, that the limitations period set forth in the second right-to-sue letter is not controlling here because plaintiff had already commenced the instant action. Docket Entry #27, Reply at 4. She basically claims that, because this matter was ongoing and because the new claims are operatively similar to those in the Complaint, the EEOC's ninety-day window is inapplicable. Such argument is not persuasive. Plaintiff cites no authority to support her position, and it is contrary to all of the previously-cited caselaw. In addition, as detailed above, the new claims are not so similar to any claims or facts in the Complaint that they would relate back to that pleading for timeliness purposes.

In sum, the proposed claims were not raised within ninety days of the issuance of either right-to-sue letter, and, thus, they "would be subject to immediate dismissal for failure to state a claim." Milano, 2007 WL 2042954 at *1. Consequently, amendment of the Complaint to include claims that defendant terminated plaintiff's employment as an act of retaliation in violation of the ADA and the ADEA would be futile. See Posr v. New York State Court Officer, 96cv5200 (CLP), 2006 WL 656985, *21 (E.D.N.Y. March 13, 2006) ("the Court finds that to allow plaintiff to amend at this time to add these claims would be futile, since in the facts alleged in the proposed amended complaint, he has failed to state a claim for which relief could be granted.").

Plaintiff also seeks to include, through amendment, the following statement at the end of her theories of liability: "Plaintiff repeats and realleges the allegations stated above. She was terminated on the basis of her protected complaints in violation of these statutes." Docket Entry #24, Motion to Amend, Exh. 1, Proposed Amended Complaint at ¶ 44. Because amendment to

---

window for bringing claims based upon such letter. In addition, plaintiff does not dispute that the instant motion comes more than ninety days after the receipt of either right-to-sue letter.

include the proposed retaliation claims under the ADA and ADEA would be futile, this proposed factual allegation would be superfluous with regard to such claims. However, defendant consents to the amendment of the NYSHRL claim to set forth an allegation of retaliation based upon plaintiff's termination. Consequently, paragraph 44 of the proposed amended complaint would be relevant to such claim. Therefore, plaintiff may amend the Complaint to include such allegation to support her claim of retaliation under the NYSHRL, and it should state: "Plaintiff repeats and realleges the allegations stated above. She was terminated on the basis of her protected complaints in violation of New York State Executive Law § 296(1)(a); (7)."

### 2. Intentional Infliction of Emotional Distress Claim

Plaintiff also wishes to amend the Complaint to include the allegations that she "has been stalked and has had her home invaded following her termination." Docket Entry #24, Mot. to Amend, Memo. of Law at 1. Plaintiff wishes to assert such facts as a new basis for a claim of intentional infliction of emotional distress. Specifically, plaintiff wishes to include the following statements in the fact section of the Complaint:

> 29.A. After she was terminated, plaintiff's home was invaded numerous times, and her computer was tampered with, but only the items relating to the hospital were deleted.
>
> 30. Plaintiff had already given her attorney many materials containing evidence for the lawsuit, and had removed other such items from her home for safekeeping.
>
> 31. The home invader moved things around in plaintiff's house, destroyed her plants, left footprints/shoeprints in the snow and in the dirt, and was actually present in the plaintiff's home when she was there.
>
> 32. The plaintiff repeatedly called the police, who came to the home and investigated, but told the plaintiff there was nothing they could do to protect her.
>
> A. One policewoman noted that if the home invader/stalker were intended [sic] to kill the plaintiff, he would have already done so.

15

> 33. The stalker/home invader also tampered with the plaintiff's car, giving her a flat tire,[8] and he stole her phone charger from her car and stole various other items.

Docket Entry #24, Mot. to Amend, Exh. 1, Proposed Amended Complaint at ¶¶ 29(A)-33. Plaintiff also seeks to amend her claim of intentional infliction of emotional distress to include a theory of liability predicated upon such facts: "The stalking and home invasion that plaintiff has suffered, and continues to suffer, have caused plaintiff to be frightened out of her wits. These acts have caused her horrible emotional distress." Id. at ¶ 42(A).[9] Plaintiff argues that she should be able to assert such claim against defendant, stating: "Since plaintiff has no enemies and cannot think of anyone else who bears her ill will, and since the materials removed from her computer all have to do with her employment at St[.] Luke's and her subsequent job search, plaintiff believes St. Luke's has engaged someone to torment her by stalking her and invading her home." Docket Entry #24, Memo. of Law at 4-5.

In opposition, defendant argues that the amendment to include such factual allegations would be futile because they fail to state a claim and amount to nothing above speculative insinuations of tortious behavior. Docket Entry #26, Memo. in Opp. at 1. According to

---

[8] The Court takes this allegation to mean that this unknown individual deflated one of the tires on plaintiff's automobile, rather than gifted her a flat tire, which the language of the proposed amended complaint actually alleges.

[9] Because the facts underlying the new allegations of stalking and harassment occurred after the commencement of the instant action, the proper vehicle for their assertion would be a motion to supplement, pursuant to Fed. R. Civ. P. 15(d). However, "[i]nasmuch as the discretion exercised by the court in deciding whether to grant leave to amend is similar to that exercised on a motion for leave to file a supplemental pleading, the court's inattention to the formal distinction between amendment and supplementation is of no consequence." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504 (3d ed. 2010). Therefore, plaintiff's improper label of this part of the motion as one to amend, rather than to supplement, the Complaint does not doom the application.

defendant, "[t]his claim would not survive a motion to dismiss as nowhere within the proposed Amended Complaint does [plaintiff] allege that [defendant] had any involvement with the alleged invasion of her home, stalking or tampering with her computer and car." Id. at 6.

In her Reply, plaintiff claims that the "stalking/home invasion claims here are proven by process of elimination," explaining that she "has no enemies, she is a widow and whoever is doing this to her has to have some significant financial resources to carry out this elaborate scheme." Docket Entry #27, Reply at 5.

To properly state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 at 235-236 ("The pleading must contain something more than a statement of fact that merely creates a suspicion of a legally cognizable right of action" (brackets and ellipses omitted))). A claim is plausible on its face, and therefore sufficiently pleaded, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). To show the plausibility of the defendant's liability, the complaint must do more than plead facts that are merely consistent with the defendant's liability. Id.

Here, the facts that plaintiff seeks to include through amendment, even if taken as true, utterly fail to state a claim against defendant. The vague factual allegations and claim neither detail the times of the intrusions nor attempts to identify the perpetrators. Plaintiff hopes to impute liability for the purported intrusions to defendant merely because "plaintiff has no enemies and cannot think of anyone else who bears her ill will, and since the materials removed

17

from her computer all have to do with her employment at St[.] Luke's and her subsequent job search . . ." Docket Entry #24, unnumb Exh., Memo. of Law at 4-5. Such statement is not a reasonable basis to believe that defendant is liable for the tortious behavior; it instead reveals that the claim is asserted against defendant on nothing more than rank supposition. A speculative allegation, such as this, is insufficient to make out a claim. See Twombly, 550 U.S. at 555. Because the allegations, however true, would not expose defendant to liability, the proposed amendment would be futile. See id. at 558.[10]

### III. Conclusion

For the aforementioned reasons, plaintiff's motion is granted insofar as it seeks to amend the Complaint to include the amendments contained in paragraphs 7(D); 29; 41, and 44, as

---

[10]  Plaintiff's counsel's attempt to amend the Complaint to include this claim is of significant concern to the Court. Rule 11(b)(3) of the Federal Rules of Civil Procedure states that by seeking to include the proposed claim of intentional infliction of emotion distress, plaintiff's counsel is certifying that to the best of her knowledge, information, and belief, the allegations in the proposed amended complaint "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . ." Rule 3.1 of the New York Rules of Professional Conduct provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." For the reasons stated above, the Court does not believe that the proposed claim of intentional infliction of emotional distress comes close to meeting the standards set forth in Fed. R. Civ. P. 11(b)(3) or Rule 3.1 of the New York Rules of Professional Conduct. The claim, as noted above, is an act of supposition, based on nothing more than innuendo, and it is frivolous.

The Court is also concerned by an additional argument put forward by plaintiff's counsel to support her motion to amend to include the claim of intentional infliction of emotional distress – that defendant "should have no fear if it did not arrange this despicable and illegal course of action." Docket Entry #27, Reply at 5. Such a cavalier argument recklessly disregards the expenditures of time and money that defendant will have to expend in litigating the claims, regardless of the outcome. See Twombly, 550 U.S. 544, 559 ("the threat of discovery expense will push cost-conscious defendants to settle even anemic cases . . . "). Such arguments, along with the misrepresentation noted in footnotes three and five of this decision, demonstrate a pattern of behavior by plaintiff's counsel in the prosecution of this motion which the Court finds particularly concerning.

modified on page fifteen of this Decision and Order, of the proposed amended complaint. It is also granted to the extent that it seeks to include the amended ad damnum clause contained in the proposed amended complaint. The motion is otherwise denied. Plaintiff is to file and serve the first amended complaint by August 26, 2014. Defendant's answer to the first amended complaint is due by September 16, 2014. The Clerk of the Court is directed to terminate the open motion at docket entry number twenty four.

Dated: August 11, 2014
      White Plains, New York

**SO ORDERED,**

_____
Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York